UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

SHIRLEY JEAN POOLE                                    CIVIL ACTION

VERSUS                                                NO. 16-16393

NANCY A. BERRYHILL, ACTING                            SECTION "R" (2)
COMMISSIONER OF SOCIAL SECURITY[1]

**ORDER AND REASONS ON MOTION;**
**FINDINGS AND RECOMMENDATION**

Plaintiff, Shirley Jean Poole, seeks judicial review pursuant to Section 405(g) of the Social Security Act (the "Act") of the final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying plaintiff's claim for disability insurance benefits ("DIB") under Title II of the Act.  42 U.S.C. § 423.  This matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and Local Rule 73.2(B).

I.    PROCEDURAL HISTORY

On August 7, 2014, Poole filed applications for DIB under Title II and supplemental security income benefits ("SSI") under Title XVI of the Act.  42 U.S.C. § 1382c.  She alleged disability since October 15, 2010, due to scoliosis, a fractured wrist, anxiety, depression, vertigo and limited ability to use both arms.  (Tr. 59, 70, 132-39, 157).  The

---

[1]Counsel for the Commissioner has advised the court that Nancy A. Berryhill is Acting Commissioner of the Social Security Administration as of January 23, 2017.  Pursuant to Fed. R. Civ. P. 25(d), Berryhill should be substituted for Carolyn W. Colvin as the defendant in this matter.  By reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), no further action needs to be taken.

Commissioner found plaintiff disabled for SSI purposes as of her application date, but denied her DIB application because she did not become disabled until <u>after</u> December 31, 2013, her date last insured. (Tr. 57-77). After her DIB claim was denied, Poole requested a hearing before an Administrative Law Judge (ALJ), which was held on March 23, 2016. (Tr. 25-56). The ALJ issued a decision denying plaintiff's DIB application on April 21, 2016. (Tr. 15-20). After the Appeals Council denied review on September 24, 2016, the ALJ's decision became the Commissioner's final decision for purposes of this court's review. (Tr. 1-5).

Poole moved in this court for leave to submit additional evidence that was not in the record before the ALJ or Appeals Council, Record Doc. No. 11, and she filed a timely memorandum in support of her appeal. Record Doc. No. 20. Defendant filed a timely reply memorandum, in which she also opposed plaintiff's motion to submit new evidence. Record Doc. No. 21.

Having considered the submissions of the parties and the applicable law, and for the following reasons, IT IS ORDERED that plaintiff's motion for leave to submit additional evidence is DENIED, and IT IS RECOMMENDED that her complaint be DISMISSED WITH PREJUDICE.

II.    <u>STATEMENT OF ISSUES ON APPEAL</u>

Plaintiff contends that the Commissioner made the following errors:

A.    The ALJ erred in finding that, before her date last insured, Poole only suffered from vertigo, hypertension and dental caries.

B.     The ALJ erred in finding that Poole did not suffer from an impairment or combination of impairments that significantly limited her ability to perform basic work-related activities before her date last insured.

C.     20 C.F.R. § 404.1520b may have required the Commissioner to ask for more information, as the evidence of record regarding the claimant's condition prior to the date last insured is consistent yet perhaps insufficient.

Poole argues in her motion for leave to submit additional evidence that the medical records attached to her motion are relevant and warrant a remand to the Commissioner to reconsider whether plaintiff had any severe impairments after her alleged onset date.

III.    ALJ'S FINDINGS RELEVANT TO ISSUES ON APPEAL

1.     Poole has not engaged in substantial gainful activity from her alleged onset date, October 15, 2010, through her date last insured, December 31, 2013.

2.     Through her date last insured, she had medically determinable impairments of vertigo, hypertension and dental caries.

3.     Through her date last insured, plaintiff did not have an impairment or combination of impairments that significantly limited her ability to perform basic work-related activities for 12 consecutive months; therefore, she did not have a severe impairment or combination of impairments.

4.     Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms.  However, her statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record.

5.    She was not under a disability from October 15, 2010, the alleged onset date, through her date last insured, December 31, 2013.

(Tr. 17-18, 20).

IV.    ANALYSIS

A.    Standards of Review

The function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the evidence.  Richard ex rel. Z.N.F. v. Astrue, 480 F. App'x 773, 776 (5th Cir. 2012) (citing Perez v. Barnhart, 415 F.3d 457, 461 (5th Cir. 2005)); Stringer v. Astrue, 465 F. App'x 361, 363 (5th Cir. 2012) (citing Waters v. Barnhart, 276 F.3d 716, 716 (5th Cir. 2002)).  Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Richardson v. Perales, 402 U.S. 389, 401 (1971); Richard ex rel. Z.N.F., 480 F. App'x at 776; Stringer, 465 F. App'x at 363-64; Perez, 415 F.3d at 461.  This court may not reweigh the evidence in the record, try the issues de novo or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision.  Halterman ex rel. Halterman v. Colvin, 544 F. App'x 358, 360 (5th Cir. 2013) (citing Newton v. Apfel, 209 F.3d 448, 452 (5th Cir. 2000)); Stringer, 465 F. App'x at 364.  The Commissioner, rather than the courts, must resolve conflicts in the evidence.  McCaskill v. Dep't of Health & Human Servs., No. 15-60304, 2016 WL 700220, at *4 (5th Cir. Feb.

22, 2016) (citing <u>Perez</u>, 415 F.3d at 461); <u>Luckey v. Astrue</u>, 458 F. App'x 322, 324 (5th Cir. 2011) (citing <u>Selders v. Sullivan</u>, 914 F.2d 614, 617 (5th Cir. 1990)); <u>Newton</u>, 209 F.3d at 452.

The ALJ is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible. <u>See</u> <u>Arkansas v. Oklahoma</u>, 503 U.S. 91 (1992). Despite this court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence supports it. <u>Joubert v. Astrue</u>, 287 F. App'x 380, 382 (5th Cir. 2008) (citing <u>Perez</u>, 415 F.3d at 461). Any findings of fact by the Commissioner that are supported by substantial evidence are conclusive. <u>Ray v. Barnhart</u>, 163 F. App'x 308, 311 (5th Cir. 2006) (citing <u>Perales</u>, 402 U.S. at 390); <u>Perez</u>, 415 F.3d at 461.

To be considered disabled and eligible for DIB, plaintiff must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A). The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability. 20 C.F.R. §§ 404.1501 to 404.1599 & appendices, §§ 416.901 to 416.998 (2014). The regulations include a five-step evaluation process for determining whether an impairment prevents a

person from engaging in any substantial gainful activity.[2]  Id. §§ 404.1520, 416.920;

Alexander v. Astrue, 412 F. App'x 719, 720 (5th Cir. 2011) (citing Audler v. Astrue, 501

F.3d 446, 447 (5th Cir. 2007)); Perez, 415 F.3d at 461. The five-step inquiry terminates if

the Commissioner finds at any step that the claimant is or is not disabled.  Id.

The claimant has the burden of proof under the first four parts of the inquiry.  If she

successfully carries this burden, the burden shifts to the Commissioner to show that other

substantial gainful employment is available in the national economy that the claimant is

capable of performing.  When the Commissioner shows that the claimant is capable of

engaging in alternative employment, the burden of proof shifts back to the claimant to rebut

this finding.  Alexander, 412 F. App'x 720-21; Perez, 415 F.3d at 461.

---

[2]The five-step analysis requires consideration of the following:

First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled.  20 C.F.R. §§ 404.1520(b), 416.920(b).

Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has no severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled.  Id. §§ 404.1520(c), 416.920(c).

Third, if an individual's impairment has lasted or can be expected to last for a continuous period of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed impairment, he or she is considered disabled without consideration of vocational evidence.  Id. §§ 404.1520(d), 416.920(d).

Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated.  If the impairment does not prohibit the claimant from returning to his or her former employment, the claimant is not disabled.  Id. §§ 404.1520(e), 416.920(e).

Fifth, if it is determined that the claimant cannot return to his or her former employment, then the claimant's age, education, and work experience are considered to see whether he or she can meet the physical and mental demands of a significant number of jobs in the national economy.  If the claimant cannot meet the demands, he or she will be found disabled.  Id. §§ 404.1520(f)(1), 416.920(f)(1).  To assist the Commissioner at this stage, the regulations provide certain tables that reflect major functional and vocational patterns. When the findings made with respect to a claimant's vocational factors and residual functional capacity coincide, the rules direct a determination of disabled or not disabled.  Id. § 404, Subpt. P, App. 2, §§ 200.00-204.00, 416.969 ("Medical-Vocational Guidelines").

The court weighs four elements of proof when determining whether there is substantial evidence of disability: "'(1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history.'" Chrisner v. Astrue, 249 F. App'x 354, 356 (5th Cir. 2007) (quoting Wren v. Sullivan, 925 F.2d 123, 126 (5th Cir. 1991)); accord Perez, 415 F.3d at 463.

B.    Factual Background

At the hearing, plaintiff's attorney stated that many of Poole's medical records from Jefferson Community Health Care ("Jefferson Community") had been destroyed.  He said that the administrative record contained notes that Poole had gone to Jefferson Community, but no reports of her visits that documented the severity of and treatment for her conditions. The ALJ responded that Exhibit 1-F contains 77 pages of medical records from Jefferson Community dated from 2011 through 2014.  (Tr. 31-32).

Poole testified that she is 59 years old, was 56 years old on her date last insured and has a high school education.  (Tr. 32-33).  She stated that she last worked as a dry cleaning presser, which required her to stand to press clothes.  She said she worked in dry cleaning for 15 years before she stopped working, but could not recall when she stopped.  (Tr. 33-34).  Poole testified that she had worked as a welder, a truck driver in 2004 and a private first class in the military assigned to security at the Waterford 3 nuclear plant around 1995.

She stated that she worked in dry cleaning for the last 15 years of her work life because her health no longer allowed her to do other types of jobs. (Tr. 34-35, 37).

Plaintiff testified that she lives by herself, cooks and cleans. She said she drives to the store and church, talks to friends on the telephone and participates in social activities at the Elks Club. (Tr. 36). She stated that she received treatment at Ocshner Hospital, Jefferson Community Clinic, St. Thomas, Charity Hospital and "the community in Avondale." (Tr. 36-37).

Poole stated that, when she worked in dry cleaning, she had to lift heavy bundles of clothes and boxes of hangers, but did not know how much the bundles or boxes weighed. She said that, if a man was available, she would ask him to retrieve a box of hangers for her. (Tr. 37-38). She said she rarely was able to take a lunch break and worked with scarcely any breaks from the beginning to the end of her shift. (Tr. 38).

Plaintiff stated that she was diagnosed with vertigo in 2012 and still suffers with it today. She described her condition as like "Mad Cow Disease" because, the first time it happened, she "got off the bed and went straight to the floor." She stated that she felt as if the room was spinning around and she could not tell up from down. (Tr. 39). She said she was prescribed medication in 2012 that she still takes, but still gets vertigo, and that her ear was "bothering" her during the hearing. Poole testified that she learned she had high blood pressure while she was working at Waterford 3 and had bad headaches that were caused by her high blood pressure and led to her being sent home from work. She said she

8

has been taking medication for high blood pressure for about ten years and currently takes four pills in the morning and one at night. She stated that, before April 2014 when her mother passed away, her vertigo "was bad" and that she took four medications for blood pressure at that time. (Tr. 40-41).

Poole stated that she has back pain and scoliosis,[3] which causes muscle spasms that feel as if someone hit her in the back and make her whole body jerk. (Tr. 41-42). She could not say what activity causes muscle spasms, but she has noticed them when she became upset or when her "nerves get bad." She said she fractured her left wrist in 2000, that her doctors immobilized it for almost a year and that it still bothers her. (Tr. 41-42).

Plaintiff testified that she injured her shoulder when she fell and tried to protect her head and back by falling on her side. (Tr. 43). She stated that her primary care doctor has prescribed hydrocodone[4] for her shoulder pain. She said she has taken hydrocodone off and on, "more off than on," for 10 years and that, before 2014, she only used it when she "had toothaches and stuff." (Tr. 44).

Poole testified that she has struggled with "bad nerves" since she was a child. (Tr. 44). She testified that, before her 93-year-old mother died, her depression and nerves were bad because she was the only person caring for her mother, who lived with Poole. Plaintiff

---

[3] Scoliosis is an "abnormal" curvature of the spine. Spine-health.com (Veritashealth.com 2017), https://www.spine-health.com/conditions/scoliosis (visited June 15, 2017).

[4] Hydrocodone is an opioid pain medication. Drugs.com (Drugs.com June 2017), https://www.drugs.com/hydrocodone.html (visited June 15, 2017).

said she took care of her mother despite her own health problems.  She testified that her superiors at work knew her mother was sick and allowed her to leave work early to tend to her mother.  She stated that her husband at the time watched her mother while plaintiff was at work, but that she had to leave her job to provide full-time care for her mother when her mother became sick every day.  (Tr. 45-46).

Poole said her last job was at Spruce Cleaners in 2010.  She reiterated that she quit work to take care of her mother.  (Tr. 46).  She said that, while she was working in 2010, she had vertigo and problems with her arms and legs, so that "I wouldn't be able to get the job [done].  I wouldn't even be able to stand up.  I wouldn't be able to do all the shirts" because she did not know "when it's going to hit.  It could hit me at any time."  (Tr. 47-48).

Plaintiff testified that she was diagnosed with insomnia in 2013, but did not know why she was unable to sleep.  She stated that she slept during the day and stayed up at night.  When her attorney pointed out that she was diagnosed with major depressive disorder in August 2013, Poole said she did not remember anything about it.  (Tr. 48).

Plaintiff stated that she stopped driving a truck in 2004 because of her dizziness and hypertension, and that she had failed to pass her physical examination to continue driving. She said she was hired to work full-time by a trucking company near Dallas, Texas after she finished truck driving school.  She said that, after about a year on the job, she could no longer focus when driving at night.  (Tr. 50-51).

C.    Medical Evidence

I have reviewed the medical records in evidence and the ALJ's summary of the medical evidence.  (Tr. 18-19).  I find the ALJ's summary of the medical evidence substantially correct and incorporate it herein by reference, with the modifications, corrections and highlights noted below.

D.    Plaintiff's Motion to Submit New Evidence

Poole seeks leave to supplement the record with medical records from Jefferson Community that were not in the administrative record.  The records are attached to her motion as Exhibits A (dated from May 25, 2011 to August 18, 2014) and B (from March 9, 2016 to October 3, 2016).  She alleges without explanation that the records "were unavailable" before both the ALJ's decision on April 21, 2016 and the Appeals Council's denial of review on September 24, 2016.  Record Doc. No. 11 at p. 1.  Plaintiff assert that these records support her argument that she had severe impairments during the relevant time period.  She asks the court to add the evidence to the record and remand this matter to the Commissioner for reconsideration.  IT IS ORDERED that the motion is denied because Poole fails to establish <u>any</u> of the three legal requirements for the relief she seeks.

It is well established that this court may <u>not</u> issue factual findings on new medical evidence and may review such evidence only to determine if a remand to the Commissioner is appropriate.  42 U.S.C. § 405(g); <u>Johnson v. Soc. Sec. Admin.</u>, 631 F. App'x 260, 262-63 (5th Cir. 2016); <u>Ferrari v. Astrue</u>, 435 F. App'x 314, 314-15 (5th Cir. 2010) (citing <u>Bradley</u>

v. Bowen, 809 F.2d 1054, 1058 (5th Cir. 1987)); Dziuk v. Barnhart, 67 F. App'x 248, 2003 WL 21145745, at *1 (5th Cir. May 1, 2003) (citing Ripley v. Chater, 67 F.3d 552, 555 (5th Cir. 1995)).  The court may remand for consideration of new evidence only upon a showing that the evidence is new and material, and that good cause exists for plaintiff's failure to incorporate it into the record in a prior proceeding.  Avery v. Colvin, 605 F. App'x 278, 284 (5th Cir. 2015) (citing Ripley, 67 F.3d at 555); Joubert v. Astrue, 287 F. App'x 380, 383 (5th Cir. 2008) (citing same); Garson v. Barnhart, 162 F. App'x 301, 303 (5th Cir. 2006) (citing Leggett v. Chater, 67 F.3d 558, 567 (5th Cir. 1995)).

Evidence that was not in existence at the time of the administrative proceedings meets the "new" requirement for remand to the Commissioner.  Hunter v. Astrue, 283 F. App'x 261, 262 (5th Cir. 2008) (citing Haywood v. Sullivan, 888 F.2d 1463, 1471 (5th Cir. 1989)).  However, "[e]vidence which is merely cumulative of that already in the administrative record is not 'new' evidence that would support a remand under § 405(g)." Wilson v. Astrue, No. H-08-01392, 2009 WL 2341803, at *4 (S.D. Tex. July 27, 2009) (citing Pierre v. Sullivan, 884 F.2d 799, 803 (5th Cir. 1989); Bradley, 809 F.2d at 1058); accord Ferrari, 435 F. App'x at 314-15; Thomas v. Colvin, No. 15-0026, 2016 WL 1020749, at *14 (W.D. La. Feb. 2, 2016), report & recommendation adopted, 2016 WL 1057455 (W.D. La. Mar. 14, 2016), aff'd, 669 F. App'x 250 (5th Cir. 2016) (citing Pierre, 884 F.2d at 803); Frickey v. Colvin, No. 14-1922-SM-SS, 2015 WL 4371492, at *11 (E.D.

La. July 14, 2015), aff'd, 643 F. App'x 392 (5th Cir. 2016) (citing 42 U.S.C. § 405(g); Haywood, 888 F.2d 1471-72).

New evidence also must be material to be the basis for a remand. The "materiality inquiry requires determining whether the evidence relates to the time period for which the disability benefits were denied." Castillo v. Barnhart, 325 F.3d 550, 551-52 (5th Cir. 2003) (citing Ripley, 67 F.3d at 555); accord Joubert, 287 F. App'x at 383. This means that the new evidence cannot merely concern a subsequently acquired disability or the deterioration of a condition that was not previously disabling. Id.; Garson, 162 F. App'x at 303.

In addition, "[f]or new evidence to be material, there must exist the reasonable possibility that it would have changed the outcome of the [Commissioner's] determination." Hunter, 283 F. App'x at 262 (quotations omitted) (citing Latham v. Shalala, 36 F.3d 482, 483 (5th Cir. 1994); Chaney v. Schweiker, 659 F.2d 676, 679 (5th Cir. 1981)); accord Hamilton-Provost v. Colvin, 605 F. App'x 233, 238 (5th Cir. 2015) (citing Latham, 36 F.3d at 483); Jones v. Astrue, 228 F. App'x 403, 406 (5th Cir. 2008) (citing 42 U.S.C. § 405(g)).

Finally, "[t]o demonstrate good cause, the claimant must provide an excusable explanation for not submitting the records earlier in the proceeding." Dennison v. Astrue, No. 08-4677, 2010 WL 744935, at *6 (E.D. La. Mar. 1, 2010) (citing Pierre, 884 F.2d at 803; Skalij v. Chater, 103 F.3d 126, 1996 WL 731580, at *3 (5th Cir. 1996)); accord Mouser v. Astrue, 545 F.3d 634, 637 (8th Cir. 2008) (citation omitted); Freeman v.

<u>Comm'r of Soc. Sec. Admin.</u>, No. 5:14-CV-49, 2015 WL 6549170, at *8 (E.D. Tex. Oct. 28, 2015) (citing <u>Leggett</u>, 67 F.3d at 567; <u>Pierre</u>, 884 F.2d at 803).]

The records from Jefferson Community dated from May 25, 2011 to August 18, 2014, in plaintiff's Exhibit A and those dated March 9 and 31, 2016, in Exhibit B are <u>not new</u> because they pre-date the ALJ's decision on April 21, 2016.  They also are not new because they are merely cumulative of reports that the ALJ reviewed.  To support her argument that the ALJ ignored several of her conditions, Poole cites the allegedly new records for lists of diagnoses made within the relevant time period of lumbago,[5] shoulder pain, cellulitis,[6] myalgia and myositis,[7] and insomnia, in addition to the vertigo, hypertension and dental caries that the ALJ found were medically determinable, non-severe impairments.  But, as Poole concedes in her memorandum in support of her appeal, the same lists of diagnoses were in the records that the ALJ reviewed.  Evidence that is not new cannot be the basis for a remand.  <u>Jones</u>, 228 F. App'x at 406.

Poole's motion does not address and fails to satisfy the good cause requirement for submitting new evidence.  Her attorney acknowledged at the hearing that the administrative

---

[5]Lumbago is "[p]ain in mid and lower back; a descriptive term not specifying cause."  <u>Stedmans Medical Dictionary</u>, avail. on Westlaw at STEDMANS 514330 (visited July 13, 2017).

[6]Cellulitis is "diffuse and especially subcutaneous inflammation of connective tissue."  <u>MedlinePlus Medical Dictionary</u>, http://c.merriam-webster.com/medlineplus/cellulitis (visited July 13, 2017).

[7]Myalgia is "pain in one or more muscles," while myositis is "muscular discomfort or pain from infection or an unknown cause."  <u>Id.</u>, http://c.merriam-webster.com/medlineplus/myalgia; http://c.merriam-webster.com/medlineplus/myositis (visited July 13, 2017).

record contained medical records from Jefferson Community dated from 2011 to 2014 and told the ALJ that the records were incomplete (Tr. 32), but did <u>not</u> ask the ALJ to hold the record open so he could obtain the missing records. (Tr. 55). "[T]he duty to obtain medical records generally belongs to the claimant." <u>McMillian v. Colvin</u>, No. 4:12-CV-661-A, 2014 WL 61172, at *12 (N.D. Tex. Jan. 6, 2014) (citing <u>Gonzalez v. Barnhart</u>, 51 F. App'x 484, 2002 WL 31319423, at *1 (5th Cir. Oct. 4, 2002)).

Poole "does not provide a satisfactory explanation for [the evidence's] absence from the initial proceedings." <u>Leggett</u>, 67 F.3d at 567. She has proffered <u>no explanation</u>, much less a "proper explanation," why she could not obtain and submit to the ALJ or Appeals Council the records in Exhibit A, which are dated from <u>almost five years to more than 20 months before</u> the ALJ's decision, and those from March 2016 in Exhibit B, which pre-date the ALJ's decision by about one month and the Appeals Council's denial of review by almost five months. <u>Pierre</u>, 884 F.2d at 803; <u>Thomas</u>, 2016 WL 1020749, at *14.

The remainder of Exhibit B, consisting of medical records dated July 1 and October 3, 2016, is new because the records post-date the ALJ's decision. However, they are <u>not material</u>, as defined by the Fifth Circuit, for the following reasons.

First, the new evidence reflects medical treatment rendered <u>more than two years after</u> Poole's last insured date, December 31, 2013. To be entitled to DIB, plaintiff must prove "that she became disabled <u>prior to the expiration of her insured status</u>." <u>Anthony v. Sullivan</u>, 954 F.2d 289, 295 (5th Cir. 1992) (citing 42 U.S.C. § 423(a), (c)) (emphasis

added); accord Hernandez v. Astrue, 278 F. App'x 333, 338 (5th Cir. 2008). A claimant who becomes disabled after the expiration of her insured status is not entitled to DIB. Kern v. Colvin, No. 3:14-CV-0437-BH, 2015 WL 1344761, at *6 (N.D. Tex. Mar. 25, 2015) (citing Anthony, 954 F.2d at 295; Owens v. Heckler, 770 F.2d 1276, 1280 (5th Cir. 1985)); Cook v. Astrue, No. 7:07-CV-0170-BF, 2008 WL 4454044, at *6 (N.D. Tex. Oct. 2, 2008) (citing 42 U.S.C. §§ 416(i)(3), 423c; Oldham v. Schweiker, 660 F.2d 1078, 1080 (5th Cir. 1981)). The medical reports from July and October 2016 are immaterial because they do not relate to the period for which benefits were denied, which extended only from Poole's alleged onset date of October 15, 2010, through her date last insured, December 31, 2013. Joubert, 287 F. App'x at 383-84; Sanchez v. Barnhart, 75 F. App'x 268, 270 (5th Cir. 2003) (citing Shave v. Apfel, 238 F.3d 592, 597 (5th Cir. 2001)); Falco v. Shalala, 27 F.3d 160, 164 (5th Cir. 1994).

Second, Poole has failed to demonstrate a reasonable possibility that the new records would change the outcome of the Commissioner's decision. To support her contention that she has severe impairments that the ALJ did not discuss, Poole asserts that the new records contain a list of her conditions that were identified during the relevant time period. However, the records that the ALJ reviewed contained those same diagnoses. (Tr. at 264-65 & 268-69 (myalgias), 325 (scoliosis, chronic pain), 341-42 (lumbago, right shoulder pain, myalgias, cellulitis) 404 (back pain)). "The severity of an impairment is measured in terms of its effect on the claimant's ability to work. A mere diagnosis is insufficient to

establish that an impairment is severe because it does not reveal the extent to which the impairment limits the claimant's ability to work." Stone v. Astrue, No. 8:12-cv-35-T-17TBM, 2013 WL 1212889, at *6 (M.D. Fla. Feb. 26, 2013), report & recommendation adopted, 2013 WL 1212881 (M.D. Fla. Mar. 25, 2013), aff'd, 586 F. App'x 505 (11th Cir. 2014) (citing Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005)); accord Casares v. Astrue, No. 4:11CV162, 2013 WL 960229, at *6 (S.D. Miss. Feb. 25, 2013), report & recommendation adopted, 2013 WL 960186 (S.D. Miss. Mar. 12, 2013) (citing Hames v. Heckler, 707 F.2d 162, 165 (5th Cir. 1983)); Morris v. Astrue, No. 4:11-CV-631-Y, 2012 WL 4468185, at *8 (N.D. Tex. Sept. 4, 2012), report & recommendation adopted, 2012 WL 4466144 (N.D. Tex. Sept. 27, 2012) (citing Crowley v. Apfel, 197 F.3d 194, 198 (5th Cir. 1999)); Ranes v. Astrue, No. 3:08-CV-2030-D, 2009 WL 2486037, at *3 (N.D. Tex. Aug. 14, 2009) (citing Randall v. Astrue, 570 F.3d 651, 657-59 (5th Cir. 2009)); Schultz v. Astrue, No. 09-3238, 2010 WL 2733605, at *9 (E.D. La. June 8, 2010), report & recommendation adopted, 2010 WL 2733565 (E.D. La. July 8, 2010); Parra v. Astrue, No. 4:07-CV-443-Y, 2009 WL 49999, at *5 (N.D. Tex. Jan. 6, 2009) (citing Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988)).

In this case, plaintiff's diagnoses from 2011 through April 21, 2016 are reflected in the medical records that the ALJ and Appeals Council considered. Based on that evidence, the ALJ found that Poole had no severe impairments. To the extent that the new medical record documents her conditions before the ALJ's decision, it is merely cumulative of the

administrative record and there is no reasonable possibility that it would change the outcome. Lenoir v. Apfel, 234 F.3d 29, 2000 WL 1568184, at *1 (5th Cir. Sept. 14, 2000) (citing Haywood, 888 F.2d at 1471; Pierre, 884 F.2d at 803 (5th Cir. 1989)); Perkins v. Shalala, No. 93-01940, 1994 WL 523788, at *3 (5th Cir. Sept. 12, 1994); Martin v. Barnhart, No. 02-3574, 2004 WL 1661207, at *3 (E.D. La. July 23, 2004) (citing Pierre, 884 F.2d at 803).

To the extent that plaintiff's new evidence might show any increased symptoms or newly diagnosed conditions that developed after her date last insured, the evidence is not material. "Remand [cannot] be based on new evidence of a subsequent deterioration of what was previously correctly held to be a non-disability condition." Lenoir, 2000 WL 1568184, at *1; accord McLendon, 184 F. App'x at 432. Thus, no reasonable possibility exists that the new evidence would have affected the ALJ's determination that Poole had no severe impairments and was not disabled before December 31, 2013.

Finally, Poole has not demonstrated good cause for her failure to incorporate the new evidence into the record at the administrative level. A medical examination conducted after the ALJ's decision "alone is not sufficient to warrant a remand." Leggett, 67 F.3d at 567. She has submitted no explanation, much less a "proper explanation," why she could not obtain and submit any additional evaluations that occurred after the ALJ's decision to the Appeals Council before the decision became final. Pierre, 884 F.2d at 803. As in Leggett, Poole "does not provide a satisfactory explanation for" the absence of this type of

18

evidence "from the initial proceedings.  The evidence consists of a new  examination taken far outside of the period in which [plaintiff] applied for or was denied benefits.  [She] offers no evidence that [her] current [physical] disability did not subsequently develop after [her date last insured] . . . or that it is not the result of the deterioration of a condition that was not previously disabling."  <u>Leggett</u>, 67 F.3d at 567.  Thus, Poole fails to provide good cause for the absence of this evidence and may not use it as the basis for a remand.

Accordingly, plaintiff's motion to submit new evidence is DENIED.

E.     <u>Plaintiff's Appeal</u>

1.     The ALJ did not err in finding that Poole's only medically determinable impairments before her date last insured were vertigo, <u>hypertension and dental caries.</u>

The ALJ found at step two of the sequential evaluation that, through plaintiff's date last insured, she had medically determinable impairments of vertigo, hypertension and dental caries.  Plaintiff argues that the ALJ erred in finding that she did not have any other medically determinable impairments.  She contends that the record contains additional diagnoses of lumbago, shoulder pain, cellulitis, myalgia and myositis, and insomnia during the relevant time period, which the ALJ improperly ignored.

However, as previously stated, the records that the ALJ reviewed contained those same diagnoses and it is well established that "[t]he severity of an impairment is measured in terms of its effect on the claimant's ability to work.  A mere diagnosis is insufficient to establish that an impairment is severe because it does not reveal the extent to which the

impairment limits the claimant's ability to work." Stone, 2013 WL 1212889, at *6; accord Casares, 2013 WL 960229, at *6; Morris, 2012 WL 4468185, at *8; Ranes, 2009 WL 2486037, at *3; Schultz, 2010 WL 2733605, at *9; Parra, 2009 WL 49999, at *5.

Poole has cited no evidence that her lumbago, shoulder pain, cellulitis, myalgia and myositis, and/or insomnia caused any limitations in her ability to perform work-related functions. She cites only the medical records from the Ochsner Medical Center emergency room dated January 7, 2010, nine months before her alleged onset date, in which she reported a history of occasional headaches due to hypertension (Tr. 238), which the ALJ already found was a medically determinable impairment, and Ochsner emergency room records dated November 17, 2011 that noted gross motor deficits and an unspecified extremities deformity.

On that date, Poole complained of headache, chills, pain in her arms and legs, nausea and a fever of 101 degrees. Although the notes state that physical examination revealed pain with joint movement, gross motor deficits, abdominal tenderness and distention, an extremities deformity and a rash, the same notes elsewhere contradict some of those findings, stating that plaintiff had no abdominal tenderness or rash and that her motor examinations were normal. (Tr. 264-65). A chest x-ray indicated possible infection in the left lung. (Tr. 269). Her discharge diagnosis was fever and headache with diffuse body aches and myalgias. She was discharged in good condition. (Tr. 270). Poole was given no prescriptions, but was advised to use Advil and Tylenol for her fever and body aches.

(Tr. 271). The complaints and diagnoses in this emergency room record were clearly limited to fever- and infection-related symptoms.

No other medical records (including the ones from the relevant time period that Poole seeks to submit as new evidence, Record Doc. No. 11-2 at p. 46) note any gross motor deficits or extremities deformity. The records of physical examinations both before and after November 17, 2011 specifically note that plaintiff had normal range of motion in her back and joints, no deformities, no lumbar spine abnormalities, no gross neurological deficits, intact sensory and motor skills, a normal gait and stance, and a negative straight leg raising test. (Tr. 239, 246, 281, 284, 298, 342, 349, 361). No objective tests in the record corroborate any subjective complaints of pain, motor deficits or deformity.

As the ALJ implicitly found at step two when he limited plaintiff's medically determinable impairments before her date last insured to vertigo, hypertension and dental caries, the medical records do not substantially support a finding of any other "medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A).

Accordingly, this assignment of error lacks merit.

2.    The ALJ did not err by finding that Poole did not suffer from a severe impairment or combination of impairments.

Poole argues that the ALJ erred in finding that she had no severe impairments.  In the Fifth Circuit, "[a]n impairment is not severe 'only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.'"  Herrera v. Comm'r of Soc. Sec., 406 F. App'x 899, 902 n.1 (5th Cir. 2010) (quoting Loza v. Apfel, 219 F.3d 378, 391 (5th Cir. 2000)); accord Stone v. Heckler, 752 F.2d 1099, 1101 (5th Cir. 1985).  The ALJ in the instant case cited the relevant standard and explained why he found that plaintiff's medically determinable impairments of vertigo, hypertension and dental caries were not severe.

Poole relies solely on the Commissioner's finding that she was disabled for SSI purposes as of August 7, 2014 because a physician who reviewed the medical evidence, Johnny B. Craig, M.D., opined that plaintiff's residual functional capacity was limited to light duty and the Medical-Vocational Guidelines directed a finding of disabled for a person of plaintiff's age, education and work experience with that limitation.  (Tr. 65-68).  However, Dr. Craig also found that the medical evidence established no severe medically determinable impairment before June 9, 2014, which was six months after Poole's last insured date.  (Tr. 63, 75).  The ALJ gave great weight to and appropriately relied Dr. Craig's finding, which is supported by the medical records.  Butler v. Barnhart, 99 F. App'x 559, 560 (5th Cir. 2004) (citing 20 C.F.R. § 404.1527(f)(2)(i)); Alejandro v. Barnhart, 291

22

F. Supp. 2d 497, 515 (S.D. Tex. 2003) (citing 20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i)).  A claimant who becomes disabled <u>after</u> expiration of her insured status is not entitled to DIB.  <u>Anthony</u>, 954 F.2d at 295  <u>Kern</u>, 2015 WL 1344761, at *6; <u>Cook</u>, 2008 WL 4454044, at *6.

In addition to affording great weight to Dr. Craig's opinion, the ALJ noted that the entirety of the evidence did not support the severity of symptoms alleged by Poole.  The ALJ noted plaintiff's testimony that she stopped working to care for her mother and her statement to a treating source that she quit her job because she did not get along with her boss, which directly contradict her statement on her disability report that she stopped working "because of my condition" (Tr. 157); the medical evidence reflecting only sporadic treatment for medically determinable impairments that did not present any work-related limitations; and the relative efficacy of medications in controlling plaintiff's symptoms of pain and dizziness.  The evidence substantially supports these findings.

A medical condition that can reasonably be remedied by surgery, treatment or medication is not disabling.  <u>Muckelroy v. Astrue</u>, 277 F. App'x 510, 511-12 (5th Cir. 2008) (citing <u>Burnside ex rel. Burnside v. Bowen</u>, 845 F.2d 587, 592 (5th Cir. 1988), <u>abrogated on other grounds by</u> <u>Sullivan v. Zebley</u>, 493 U.S. 521, 527 (1990)); <u>Hebert v. Barnhart</u>, 197 F. App'x 320, 323 (5th Cir. 2006) (citing <u>Johnson v. Bowen</u>, 864 F.2d 340, 348 (5th Cir. 1988)); <u>Lopez v. Massanari</u>, 273 F.3d 1094, 2001 WL 1085089, at *1 (5th Cir. Aug. 29, 2001) (citing 20 C.F.R. §§ 404.1530, 416.930; <u>Johnson v. Sullivan</u>, 894

F.2d 683, 685 n. 4 (5th Cir. 1990)); Bolton v. Apfel, 237 F.3d 632, 2000 WL 1701816, at *1 (5th Cir. Nov. 3, 2000); Entrekin v. Berryhill, No. 2:15CV153, 2017 WL 1053083, at *5 (S.D. Miss. Mar. 20, 2017) (citing Muckelroy, 277 F. App'x at 511-12; Lovelace v. Bowen, 813 F.2d 55, 59 (5th Cir. 1987)); Acosta v. Astrue, 865 F. Supp. 2d 767, 791 (W.D. Tex. 2012) (citing Johnson, 864 F.2d at 348; Hernandez v. Shalala, 41 F.3d 665, 1994 WL 685062, at *3 (5th Cir. 1994)).  A claimant's lack of need for strong medication or failure to seek treatment are relevant factors to consider in determining the severity of an alleged impairment and may be used in conjunction with the medical reports to discount plaintiff's complaints of disabling pain or other limitations.  Clayborne v. Astrue, 260 F. App'x 735, 737 (5th Cir. 2008); Doss v. Barnhart, 137 F. App'x 689, 690 (5th Cir. 2005); Bryan v. Halter, 252 F.3d 1357, 2001 WL 422878, at *2 (5th Cir. Apr. 5, 2001) (citing 20 C.F.R. §§ 404.1530, 416.930; Wren v. Sullivan, 925 F.2d 123, 128 (5th Cir. 1991)); Austin v. Apfel, 205 F.3d 1338, 1999 WL 1338401, at *1 (5th Cir. 1999) (citing Griego v. Sullivan, 940 F.2d 942, 945 (5th Cir. 1991)). The medical evidence substantially supports that Poole's vertigo was controlled by medication (Tr. 297-99); she sought treatment for blood pressure-related symptoms when she was out of medication and she had no signs of end organ damage caused by hypertension (Tr. 246, 251-52, 284, 297-98); and her dental pain occurred sporadically in 2010 and 2011 (Tr. 242-47, 251-53, 259-61), when she was treated with antibiotics and pain medication, and once in 2013, when she eloped from the emergency room rather than await treatment.  (Tr. 231-32).

Further, a claimant is not disabled if she is unemployed for reasons other than because her severe impairments render her functionally unable to work.  20 C.F.R. §§ 404.1566(c), 416.966(c); <u>Jacobs v. Shalala</u>, 997 F.2d 880, 1993 WL 260990, at *4 (5th Cir. 1993); <u>Glassman v. Sullivan</u>, 901 F.2d 1472, 1474 (8th Cir. 1990); <u>Harrell v. Bowen</u>, 862 F.2d 471, 479 (5th Cir. 1988); <u>Al-Mirzah v. Astrue</u>, No. C09-1671-JLR-BAT, 2010 WL 2757096, at *8 (W.D. Wash. June 25, 2010), <u>report & recommendation adopted</u>, 2010 WL 2754350 (W.D. Wash. July 12, 2010); <u>Fletcher v. Astrue</u>, No. 5:09-CV-070-BG ECF, 2010 WL 1644877, at *3 (N.D. Tex. Mar. 31, 2010), <u>report & recommendation adopted</u>, 2010 WL 1644874 (N.D. Tex. Apr. 23, 2010).  Poole testified that she quit working to care for her mother full-time from 2010 until her mother's death in April 2014 (Tr. 45-46), and she told a treating source on August 22, 2013 that she had quit her job because she did not get along with her boss.  (Tr. 401).

The ALJ noted the inconsistency between Poole's statements about her reasons for not working and her statements concerning the intensity, persistence and limiting effects of her symptoms and the medical evidence and other evidence in the record.  Determining the credibility of plaintiff's subjective evidence of pain and disability is a necessary part of the ALJ's consideration of the evidence.  <u>Luckey</u>, 458 F. App'x at 326 (citing <u>Scott v. Heckler</u>, 770 F.2d 482, 485 (5th Cir. 1985)); <u>Perez</u>, 415 F.3d at 462.  The ALJ is bound to explain his reasons for rejecting a claimant's subjective complaints, but "is not required to 'follow formalistic rules in his articulation.'"  <u>Hernandez</u>, 278 F. App'x at 339 (quoting

Falco, 27 F.3d at 164).  The ALJ has the responsibility to evaluate the credibility of witnesses, Masterson v. Barnhart, 309 F.3d 267, 272 (5th Cir. 2002), and "credibility conclusions are 'precisely the kinds of determinations that the ALJ is best positioned to make.'"  Spruill v. Astrue, 299 F. App'x 356, 358 (5th Cir. 2008) (quoting Falco, 27 F.3d at 164).  Thus, the ALJ's credibility evaluation is entitled to considerable deference by this court.  McKnight v. Astrue, 340 F. App'x 176, 181 (5th Cir. 2009) (citing Newton, 209 F.3d at 459); Bedford v. Astrue, 236 F. App'x 957, 962 (5th Cir. 2007) (citing Newton, 209 F.3d at 459).  The ALJ's explanation of his reasons for finding plaintiff not entirely credible is all that is required.  Undheim v. Barnhart, 214 F. App'x 448, 450-51 (5th Cir. 2007) (citing 20 C.F.R. § 404.1529(c); Falco, 27 F.3d at 164); James J. Flanagan Stevedores, Inc. v. Gallagher, 219 F.3d 426, 430 & n.8 (5th Cir. 2000) (citing Falco, 27 F.3d at 163); Godbolt v. Apfel, No. 98-1680, 1999 WL 179476, at *9 (E.D. La. Mar. 31, 1999).  The ALJ complied with these standards.

Accordingly, this assignment of error lacks merit.

3.    The Commissioner was not required to ask Poole's treating physicians for more information.

Plaintiff argues that "20 C.F.R. 404.1520b may have require[d] the Commissioner to ask for more information, as the evidence of record regarding the claimant's condition prior to the date last insured is consistent yet perhaps insufficient."  Record Doc. No. 20 at p. 7.  She notes that the record reflects that medical evidence from the Jefferson Parish Human Services Authority (the "Human Services Authority") was destroyed and asserts

without any evidentiary support that the missing records "contain[ed] most of the evidence of her [unspecified] condition prior to the date last insured." Record Doc. No. 20 at p. 7. Poole contends that 20 C.F.R. § 404.1520b <u>required</u> the Commissioner to recontact plaintiff's physicians at the Human Services Authority to find out whether her "several [diagnosed] impairments that began prior to the date last insured . . . resulted in more than a minimal effect on her ability to perform work related activities." <u>Id.</u> at p. 8.

Poole overstates the requirements of Section 404.1520b. The regulation states: "If the evidence is consistent but we have insufficient evidence to determine whether you are disabled, or if after considering the evidence we determine we cannot reach a conclusion about whether you are disabled, <u>we will determine the best way</u> to resolve the inconsistency or insufficiency." 20 C.F.R. § 404.1520b(b)(2) (emphasis added). The Commissioner may resolve the inconsistency or insufficiency by, among several options, recontacting the treating source, but the Commissioner "<u>may choose not to seek additional evidence</u> or clarification from a medical source if we know from experience that the source either cannot or will not provide the necessary evidence." <u>Id.</u> § 404.1520b(b)(2)(i) (emphasis added). This section grants the Commissioner discretion to decide whether to recontact a treating source. <u>Marceaux v. Comm'r of Soc. Sec.</u>, No. 14-3281, 2016 WL 3039576, at *7 (W.D. La. Feb. 22, 2016), <u>report & recommendation adopted</u>, 2016 WL 3040142 (W.D. La. May 23, 2016) (citing <u>Colegrove v. Colvin</u>, 2015 WL 9582909, at *8 (N.D. Tex. Dec. 14, 2015), <u>report and recommendation adopted</u>, 2015 WL 9581835 (N.D. Tex.

Dec. 30, 2015); <u>Requirement to Recontact Medical Sources</u>, 77 Fed. Reg. 10,651, 10,655,

10,656 (Feb. 23, 2012)); <u>Ruffins v. Colvin</u>, No. 14-754-RLB, 2016 WL 617445, at *5

(M.D. La. Feb. 16, 2016); <u>Jones v. Colvin</u>, No. 4:13-CV-818-A, 2015 WL 631670, at *7

(N.D. Tex. Feb. 13, 2015).

Poole's argument fails for several reasons. First, the disability adjudicator noted on

December 30, 2014 that she had "exhaust[ed] all of [her] effort[s] to obtain record[s] from

JPHSA [but] . . . the records had been destroyed." (Tr. 62). This statement is confirmed

by the case development sheet showing several attempts to obtain records from the Human

Services Authority (Tr. 316-19) and a letter from the Human Services Authority dated

October 21, 2014 stating that the records had been destroyed. (Tr. 312). The

Commissioner was well within her discretion to decide that a community health services

center that undoubtedly served hundreds, if not thousands, of patients between Poole's

alleged onset date of October 15, 2010 and her date last insured of December 31, 2013,

would not be able to provide any additional evidence, even if it had been contacted again.

Second, the record contains reports from Nirmala Indiru, M.D., a psychiatrist at Jeff

Care, <u>a division of the Human Services Authority</u>, dated August 22, June 21 and

November 6, 2013 (before Poole's date last insured) and January 13-14 (a few days after

the relevant time period) and October 1, 2014 (long after the relevant time period),

indicating that the doctor had treated Poole for depression and anxiety. (Tr. 325-26,

399-414). Thus, despite the Human Services Authority's letter stating that plaintiff's

records had been destroyed, the record actually includes medical records from Jeff Care, which were supplied by Poole's own attorney. (Tr. 322-24, 398). As previously stated, plaintiff generally has the duty to obtain medical records, McMillian, 2014 WL 61172, at *12 (citing Gonzalez, 2002 WL 31319423, at *1), but her attorney did not ask the ALJ to hold the record open to recontact her doctors. "[B]ecause [Poole] was represented by counsel and had an opportunity to testify at the hearing regarding her disability, the ALJ was under no additional obligation to make a 'reasonable effort' to obtain [her treating physician's] records." Jones v. Astrue, 691 F.3d 730, 734 n.5 (5th Cir. 2010) (quoting 20 C.F.R. § 404.1512(d)) (additional citation omitted).

Third, plaintiff stated on her disability report that the only treatment she received from the Human Services Authority was for anxiety and depression (Tr. 160-61), not for any physical conditions. The records from Jeff Care confirm that. She does not assign as error the ALJ's finding that she has no medically determinable mental impairment. Any additional information that the Human Services Authority might provide regarding her mental condition is therefore irrelevant to her appeal and cannot be the basis for remand.

Accordingly, this assignment of error lacks merit.

## CONCLUSION

The ALJ did not err in finding that Poole's vertigo, hypertension and dental caries were her only medically determinable impairments before her date last insured or that she

did not suffer from any severe impairments.  The Commissioner was not required to ask the Human Services Authority for more information.

## RECOMMENDATION

Accordingly, IT IS RECOMMENDED that plaintiff's complaint be DISMISSED WITH PREJUDICE.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[8]

New Orleans, Louisiana, this   19th   day of July, 2017.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[8]Douglass referred to the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.